## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEPHANIE BAKER,        :      No. 4:16-CV-02311
                          :
        Plaintiff,       :      (Judge Brann)
                          :
      v.                  :
                          :
BENTON AREA SCHOOL DISTRICT, :
COLUMBIA MONTOUR SNYDER    :
UNION COUNTIES OF CENTRAL     :
PENNSYLVANIA SERVICE         :
SYSTEM, COLEEN GENOVESE,     :
KELLY KOCHER, and           :
LINDSAY RADO,             :
                          :
        Defendants.     :

## MEMORANDUM OPINION

### AUGUST 28, 2017

Defendants – Benton Area School District ("BASD"), Columbia Montour Snyder Union Counties of Central Pennsylvania Service System ("CMSU"), Coleen Genovese, Kelly Kocher, and Lindsay Rado – all moved to dismiss Plaintiff Stephanie Baker's complaint for failure to state a claim on which relief can be granted. For the reasons that follow their motions are granted in part and denied in part.

## I. BACKGROUND[1]

### A. Ms. Baker's Employment with BASD

In March 2013, Ms. Baker began working as a counselor at BASD.[2] At the time of her hiring, she was employed "through" a company called Synergy Systems Group, Inc.[3] In January 2016, CMSU – a "governmental association" formed by Columbia, Montour, Snyder, and Union Counties – assumed Synergy's functions.[4] As a result of that reorganization, Ms. Baker was given a new title – "D & A Prevention Specialist" – and her job became a civil service position.[5] Like other staff members similarly situated, she was required to take a civil service exam and was placed on a six-month probationary period.[6]

### B. The Video Incident

In the fall of 2015, Ms. Baker learned about a video that had been posted to social media by a BASD student.[7] The video, taken in a school restroom, featured two BASD special education students and included a background of "vulgar,

---

[1] When considering a motion to dismiss for failure to state a claim, a court assumes the truth of all allegations made in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The material in this "Background" section, then, is taken entirely from Ms. Baker's Complaint, ECF No. 1, and is presumed true for purposes of these motions to dismiss.

[2] ECF No. 1 ¶ 14.

[3] *Id.*

[4] *Id.* ¶ 15.

[5] *Id.* Presumably, "D & A" stands for "Drug and Alcohol."

[6] *Id.*

[7] *Id.* ¶¶18-19.

sexually explicit music."[8]  Ms. Baker showed the video to Ms. Genovese (principal

of BASD's Middle/Senior High School) and Ms. Kocher (the school's guidance

counselor).[9]  Ms. Genovese, in turn, notified the student's mother (a member of

BASD's school board), and the video was taken down.[10]  Through Ms. Kocher,

Ms. Genovese sent an order to all BASD staff – including Ms. Baker – indicating

that neither the special education students' parents nor Children & Youth Services

were to be notified about the video.[11]  At some point, Ms. Genovese and Ms. Rado

(the school's director of special education) "made fun of" the video.[12]

Ms. Baker alleges that Ms. Genovese, Ms. Kocher, and Ms. Rado knew that

Ms. Baker "disapproved" of the way they handled the video incident, and that

these individuals decided that Ms. Baker "was a danger to them" and that "their

positions would be safer if Ms. Baker was gone from [BASD]."[13]

### C.    June 1, 2016 Reprimand

On June 1, 2016, Ms. Baker was called to a meeting with Allison Wilson

(her immediate supervisor at CMSU and a "very good friend" of Ms. Kocher) and

---

[8]   *Id.* ¶ 18.

[9]   *Id.* ¶ 19.

[10]  *Id.*

[11]  *Id.* ¶ 20.

[12]  *Id.* ¶ 22.

[13]  *Id.* ¶ 23.

Barbara Gorrell (CMSU's "D&A Administrator" and Ms. Wilson's supervisor).[14] At that meeting, Ms. Baker was told that, because of some reported problems with her attendance at work, her probationary period was being extended by three months, to a total of nine months.[15]

### D. The Anonymous Letter and Resulting Investigation

In the summer of 2016, an anonymous letter was sent to BASD's superintendent and school board members.[16] The letter, which was written at least in part by Ms. Baker,[17] discussed the video incident and a host of other problems at BASD, including BASD's "misuse of special education law" to allow the graduation of unqualified students.[18] After receiving the letter, the BASD superintendent began an investigation into its allegations, leading Ms. Genovese and Ms. Rado to "orchestrate a vote of 'no confidence'" in the superintendent.[19] As a result, BASD hired an outside attorney to conduct the investigation.[20]

---

[14] *Id.* ¶¶ 24-25.

[15] *Id.* ¶ 26-27, 29.

[16] *Id.* ¶ 30.

[17] The complaint indicates that Ms. Baker "was the author or one of the authors" of the letter. *Id.* ¶ 36.

[18] *Id.* ¶¶ 31-32.

[19] *Id.* ¶¶ 33-34.

[20] *Id.* ¶ 35.

Ms. Baker alleges that, because BASD, Ms. Genovese, Ms. Kocher, and Ms. Rado "correctly suspected" Ms. Baker's authorship of the letter, they "decided that they had to eliminate Ms. Baker from the school system."[21]

### E. September 15, 2016 Meeting

On September 15, 2016, Ms. Baker attended another meeting with Ms. Wilson and Ms. Gorrell.[22] There, Ms. Wilson and Ms. Gorrell told Ms. Baker that, although there were no new reported problems with Ms. Baker's work performance, her probationary period was being extended by another six months, to a total of fifteen months.[23] When questioned about this decision, Ms. Wilson and Ms. Gorrell indicated that they had made a mistake at the June 1, 2016 meeting by imposing a three-month extension when they should have imposed a six-month extension.[24]

Also at this meeting, Ms. Gorrell told Ms. Baker of a plan to send out evaluation forms to the teachers, staff, and students of the six districts where CMSU had prevention specialists (including BASD) to review the work of those specialists (including Ms. Baker).[25] Ms. Baker expressed her eagerness for these evaluations, since she had a "great working relationship" with the individuals at

---

[21] *Id.* ¶¶ 36-37.

[22] *Id.* ¶ 38.

[23] *Id.* ¶¶ 39-40.

[24] *Id.*

[25] *Id.* ¶¶ 16, 41

BASD and thought that CMSU "would be very impressed" with the results.[26]

However, Ms. Baker also "expressed concern about possible retaliation" by Ms.

Genovese, Ms. Kocher, and Ms. Rado (presumably in the form of negative

comments about Ms. Baker on the planned evaluations) because of the ongoing

investigation and the fact that Ms. Baker might have to testify or be interviewed as

part of that investigation.[27]  Ms. Gorrell stated that "all the evaluations would be

taken into account."[28]

### F.    The Evaluations

On September 20, 2016, the evaluation forms were emailed to BASD staff

by Ms. Kocher.[29]  The email containing the forms was originally sent by Ms.

Gorrell to Ms. Wilson who, in turn, sent it to Ms. Kocher.[30]  Although Ms. Gorrell

had indicated that CMSU's five other prevention specialists would also be

evaluated, they were not; the forms' questions "were specifically about Ms. Baker"

and referred to her by name.[31]  A number of individuals at BASD informed Ms.

Baker that they gave her "extremely positive evaluations."[32]

---

[26]  *Id.* ¶ 41.

[27]  *Id.* ¶ 42.

[28]  *Id.*

[29]  *Id.* ¶ 44.

[30]  *Id.*

[31]  *Id.* ¶¶ 44-45.

[32]  *Id.* ¶ 47.

### G.    Ms. Baker's Cooperation with the Investigation

On September 23, 2016, Ms. Baker met with the attorney conducting the investigation, and told him what she knew about the video incident and about BASD's graduation of unqualified students.[33]

### H.    Termination of Ms. Baker

On September 26, 2016 – three days after Ms. Baker met with the attorney – Ms. Wilson called Ms. Baker to schedule a meeting to discuss the results of the evaluations.[34]  Ms. Baker was unable to meet that day, so the meeting was scheduled for September 28, 2016.[35]

The meeting was attended by Ms. Baker, Ms. Wilson, Ms. Gorrell, and Richard Beach (CMSU's mental health administrator).[36]  There, Ms. Baker was told that, although there were "several very positive and nicely written evaluations," a few "were so extremely negative that [CMSU] had no choice but to terminate" her.[37]  Ms. Baker asked if those negative evaluations were from individuals "being investigated for unethical conduct," but was refused an answer.[38]  Ms. Baker was also denied a chance to review the comments on the

---

[33]  *Id.* ¶ 48.

[34]  *Id.* ¶ 49.

[35]  *Id.*

[36]  *Id.* ¶¶ 49-50.

[37]  *Id.* ¶ 50.

[38]  *Id.*

negative evaluations.[39]  Ms. Baker was given an opportunity to resign, but she refused to do so.[40]

Ms. Baker alleges that Ms. Genovese, Ms. Kocher, and Ms. Rado made "negative and false comments" about her (presumably on the evaluations) as "part of the scheme to have [her] terminated," which – as evidenced by CMSU's termination of her on September 28, 2016 – was ultimately successful.[41]

## I.    Procedural History

On November 17, 2016, Ms. Baker instituted the instant action.  In Count I of her complaint, brought under 42 U.S.C. § 1983, she alleged that BASD, CMSU, Ms. Genovese, Ms. Kocher, and Ms. Rado[42] retaliated against her for exercising her First Amendment free speech rights and "conspired with each other and with others to" do so.[43]  Specifically, she alleged that the defendants "impos[ed] adverse employment consequences on her" – including the June 1, 2016 reprimand, the two extensions of her probationary period, the "targeted" evaluation, and her termination – because she "sp[o]k[e] out about issues of public concern within the

---

[39]  *Id.*

[40]  *Id.* ¶ 52.

[41]  *Id.* ¶ 51.

[42]  BASD, Ms. Genovese, Ms. Kocher, and Ms. Rado are represented jointly in this matter.  For convenience, this Court will refer to this group collectively as the "BASD Defendants."  When one or more of those defendants are singled out, they will be referred to by name.

[43]  ECF No. 1 ¶¶ 54-55.

BASD" – presumably, because she participated in authoring the anonymous letter and cooperated with the resulting investigation.[44]

In Count II, brought under the Pennsylvania Whistleblower Law,[45] she similarly alleged that CMSU and the BASD Defendants retaliated against her for reporting "wrongdoing" and/or "waste," as those terms are described under that law.[46]

In Count III, brought under 42 U.S.C. § 1983, she alleged that CMSU violated her due process rights by terminating her "without notice or an opportunity to be heard."[47]

In Count IV, she alleged that Ms. Genovese, Ms. Kocher, and Ms. Rado "published defamatory and false communications" against her – presumably, by making the allegedly "negative and false comments" about her on the evaluations – which "harmed [her] reputation and lowered her in the estimation of the community."[48]

---

[44]  *Id.* ¶ 57.

[45]  43 P.S. § 1421 *et seq.*

[46]  ECF No. 1 ¶ 61-64.

[47]  *Id.* at 19-20, ¶ 67.  (Ms. Baker's complaint contains two paragraphs numbered 67.)

[48]  *Id.* at 20 ¶¶ 65-67.  (Ms. Baker's complaint contains two paragraphs numbered 65, 66, and 67.)

On December 12, 2016, CMSU moved to dismiss the claims against it (Counts I, II, and III) for failure to state a claim on which relief can be granted.[49] On December 13, 2016, the BASD Defendants moved to dismiss the claims against them (Counts I, II, and IV), also for failure to state a claim on which relief can be granted.[50]  Ms. Baker responded to these motions on December 22 and 28, 2016.[51]  In her response to BASD's motion, she withdrew her 42 U.S.C. § 1983 claim against BASD.[52]  CMSU replied to Ms. Baker's response on January 5, 2017,[53] and the BASD Defendants did so on January 11, 2017.[54]

## II. DISCUSSION

### A. Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief may be granted,[55] a court assumes the truth of all factual allegations in a

---

[49]  ECF No. 15.

[50]  ECF No. 19.

[51]  ECF Nos. 21, 22.

[52]  Ms. Baker withdrew this claim because she admitted that she had failed to identify any official policy or custom of BASD that led to her alleged injury.  *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 689 (1978); *Bd. Of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997).

CMSU raised this *Monell*-based argument in its reply to Ms. Baker's response.  However, this Court may not consider arguments raised for the first time in a reply brief.  *See, e.g.*, *United States v. Yeaman*, 194 F.3d 442

[53]  ECF No. 23.

[54]  ECF No. 24.

[55]  Federal Rule of Civil Procedure ("FRCP") 12(b)(6).

plaintiff's complaint and draws all inferences in favor of that party;[56] the court does not, however, assume the truth of any of the complaint's legal conclusions.[57] If a complaint's factual allegations, so treated, state a claim that is plausible – *i.e.*, if they allow the court to infer the defendant's liability – the motion is denied; if they fail to do so, the motion is granted.[58]

### B.  First Amendment Retaliation Claim

To prevail on a claim for First Amendment retaliation brought under 42 U.S.C. § 1983, a plaintiff must prove (1) that she had "engaged in [First Amendment-]protected activity," (2) that the defendant's allegedly retaliatory action was "sufficient to deter a person of ordinary firmness from exercising [her First Amendment] rights," and (3) that there was a "causal connection between the protected activity and the retaliatory action."[59]  For the reasons stated in this section, Ms. Baker's First Amendment retaliation claims (Count I) against BASD and CMSU are dismissed; those against Ms. Genovese, Ms. Kocher, and Ms. Rado, however, survive.

---

[56]  *Phillips v. Cnty. Of Allegheny*, 616 F.3d 224, 228 (3rd Cir. 2008).

[57]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3rd Cir. 2016).

[58]  *Id.*

[59]  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3rd Cir. 2007).

### 1. Whether Ms. Baker Alleged That She Was Injured By an Official Policy or Custom of CMSU or BASD

In their motion to dismiss, the BASD Defendants argue that Ms. Baker's complaint failed to allege that the District itself had an official policy or custom in place that led to her injury. In her response to that motion, Ms. Baker concedes that point and withdraws her claim against the District. Therefore, her First Amendment retaliation claim against BASD is dismissed.

CMSU does not make a similar argument in its motion to dismiss, although it does make that argument when replying to Ms. Baker's response. Although this Court generally does not consider arguments raised for the first time in a reply brief, it may do so in its discretion,[60] and will do so here.

Under 42 U.S.C. § 1983, "[e]very person" may be liable for the injuries that result from their violations of the constitution. For purposes of that statute, a municipality or other local governmental body a considered a "person,"[61] but may not face § 1983 liability "solely because it employs a tortfeasor."[62] Instead, a plaintiff asserting a § 1983 claim against such a body must point to some official policy or custom of the body that lead to the alleged injury.[63]

---

[60] *Banknorth, N.A. v. BJ's Wholesale Club, Inc.*, 442 F.Supp.2d 206, 215 (M.D. Pa. 2006).

[61] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

[62] *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997).

[63] *Id.*

In her complaint, Ms. Baker identified CMSU as a "governmental association" formed by several Pennsylvania counties; therefore, it may be considered a "person" under § 1983. Ms. Baker fails, however, to point to any official policy or custom of CMSU that led to her termination. Although she discusses the actions of several CMSU employees – including Ms. Wilson, Ms. Gorrell, and Mr. Beach – nowhere does she allege, nor can her complaint be construed as plausibly alleging, that those employees were acting pursuant to some CMSU policy or custom. Therefore, her First Amendment retaliation claim against CMSU is also dismissed. The Court, however, grants Ms. Baker leave to amend her complaint to allege such a policy or custom.[64]

### 2. Whether Ms. Baker Alleged that Ms. Genovese, Ms. Kocher, and Ms. Rado "Conspired" or Agreed with Each Other

To state a claim of conspiracy under 42 U.S.C. § 1983, a plaintiff must allege that there was some "combination, agreement, or understanding" between the alleged co-conspirators.[65] The BASD Defendants argue that Ms. Baker's complaint failed to plausibly allege a conspiracy because it fails to allege that defendants "had any discussions or agreements" about her termination.

---

[64] FRCP 4(a).

[65] *Spencer v. Steinman*, 968 F.Supp. 1011, 1020 (E.D. Pa. 1997).

First, while Ms. Baker's complaint alleges a "conspiracy,"[66] it also alleges that each of the remaining defendants (Ms. Genovese, Ms. Kocher, and Ms. Rado) retaliated against her individually;[67] therefore, her First Amendment retaliation claim against those individuals may survive on this basis alone. Second, while it is true that Ms. Baker does not allege any specific "discussions or agreements" among the defendants, she does allege that their "negative and false comments" were "part of [a] scheme" – *i.e.*, that they were part of some common plan amongst them. Since a scheme or common plan necessarily requires some sort of discussion or agreement, Ms. Baker has plausibly alleged a conspiracy.

### 3. Whether Ms. Baker Alleged That She was Engaged in Activity Protected by the First Amendment

The BASD Defendants argue that Ms. Baker's complaint failed to allege that she engaged in activity protected by the First Amendment.

When a government employee like Ms. Baker alleges that she was retaliated against for her speech, her speech must have been that of a "citizen addressing matters of public concern," and not "pursuant to [her] official duties" as a government employee.[68] Whether a government employee's speech is made

---

[66] ECF No. 1 ¶ 56-58.

[67] The complaint alleges that Ms. Genovese, Ms. Kocher, and Ms. Rado "made negative and false comments about Ms. Baker." ECF No. 1 ¶ 51. For purposes of deciding this motion, we interpret that language as alleging that those defendants made those comments individually on Ms. Baker's evaluations.

[68] *Garcetti v. Ceballos*, 547 U.S. 410, 417, 421 (2006).

pursuant to her official duties requires a "practical" inquiry,[69] and "is a mixed question of fact and law."[70]  Speech is addressed to a matter of public concern, in turn, "when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."[71]

According to Ms. Baker's complaint, she participated in authoring an anonymous letter sent to the BASD superintendent and school board that accused BASD of, *inter alia*, "misus[ing] special education law" to allow the graduation of unqualified students.  Ms. Baker does not allege that providing such information to the superintendent and school board was done "pursuant to [her] official duties"; in fact, the anonymous nature of the letter cuts strongly against coming to such a conclusion.  This "mixed question of fact and law," then, cannot be resolved without development of the record.  Further, the quality of education provided by public schools can certainly be classified as a "concern to the community" and consequently a matter of "public concern."  Therefore, Ms. Baker has alleged facts

---

[69]  *Id.* at 424.

[70]  *Dougherty v. School Dist. Of Philadelphia*, 772 F.3d 979, 988 (3rd Cir. 2014) (internal quotation marks and citation omitted).

[71]  *Lane v. Franks*, 134 S.Ct. 2369, 2380 (2014) (internal quotation marks and citation omitted).

sufficient to show that she was engaged in activity protected by the First

Amendment.[72]

### 4. Whether Ms. Baker Alleged that the Defendant's Retaliatory Action Was Sufficient to Deter a Person of Ordinary Firmness From Exercising Her First Amendment Rights

The BASD Defendants argue that Ms. Baker's complaint failed to allege that

their allegedly retaliatory conduct was sufficient to deter a person of ordinary

firmness from exercising her First Amendment rights.

Courts often hold that conduct consisting merely of "criticism, false

accusations, or verbal reprimands" is insufficient to adversely affect an employee's

exercise of her First Amendment rights and is, therefore, unactionable.[73] Poor

employment evaluations, however, may be actionable, even if those poor

---

[72] The BASD Defendants argue that because Ms. Baker's comments were "derive[d] from 'special knowledge' or 'experience' acquired on the job," they automatically relate to her official duties and, therefore, lose their First Amendment protection. The BASD Defendants rely on several Third Circuit cases for this proposition, including *Foraker v. Chaffinch*, 501 F.3d 231 (3rd Cir. 2007). Although that case discusses "special knowledge" and "experience," it does not stand for the proposition advanced. Rather, the conclusion reached– that the plaintiffs' speech was not protected – turned on the fact that reporting such "special knowledge," etc., was part of the plaintiffs' official duties. *Foraker*, 501 F.3d at 241; *see Flora v. County of Luzerne*, 776 F.3d 169, 177 (3rd Cir. 2015) (answering a similar argument by noting that *Foraker* "considered how the employee learned of the information as only one non-dispositive factor among many"); *see also Lane v. Franks*, 134 S.Ct. 2369, 2379 (2014) ("[T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee – rather than citizen – speech.").

[73] *McKee v. Hart*, 436 F.3d 165, 170 (3rd Cir. 2006) (internal quotation marks and citation omitted).

evaluations do not lead directly to adverse employment consequences.[74]  Of course, because it is "well-settled that a State cannot *condition* public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression,"[75] termination from one's job is also actionable.[76]

The BASD Defendants argue that the alleged "negative and false comments" about Ms. Baker were simply "criticism, false accusations, or verbal reprimands." These comments, however, allegedly took the form of poor employment evaluations.  Additionally, Ms. Baker alleges a conspiracy in which those comments were "part of the scheme to have [her] *terminated*."  Therefore, the alleged retaliatory actions of the BASD Defendants – the comments alone or as part of the scheme to have Ms. Baker terminated – were sufficient to deter a person of ordinary firmness from exercising her First Amendment rights.

---

[74]  *Suppan v. Dadonna*, 203 F.3d 228, 234-35 (3rd Cir. 2000) (holding that low rankings on employees' evaluations were "sufficient to deter [] person[s] of ordinary firmness" from exercising their First Amendment rights, even if plaintiffs could not show that the low rankings prevented them from being promoted).

[75]  *Garcetti v. Ceballos*, 547 U.S. 410, 413 (2006) (emphasis added) (internal quotation marks and citation omitted).

[76]  *See also Brennan v. Norton*, 350 F.3d 399, 419 (3rd Cir. 2003) ("A public employer adversely affects an employee's First Amendment rights . . . when it makes decisions which relate to promotion, transfer, recall, and *hiring*" (emphasis added)(internal quotation marks and citation omitted)).

##### 5. Whether Ms. Baker Alleged a Causal Connection Between Her Speech and Her Termination.

CMSU argues that Ms. Baker's complaint failed to allege that there was a causal connection between Ms. Baker's speech and her termination. Although Ms. Baker's First Amendment retaliation claim against CMSU has been dismissed, CMSU relies on this argument to support another argument, *infra*, regarding Count II of Ms. Baker's complaint. Therefore, it will be addressed.

In order to prove a causal connection between protected activity and an alleged retaliatory action, a plaintiff must show either (1) an "unusually suggestive temporal proximity" between the two, (2) a "pattern of antagonism coupled with timing," or (3) "evidence gleaned from the record as a whole" that allows the "trier of fact [to] infer causation."[77] CMSU focuses its argument here solely on "temporal proximity," citing cases that it believes shows that the length of time between Ms. Baker's speech and her termination is insufficient to prove a causal connection between the two.

According to her complaint, Ms. Baker authored a letter to the BASD superintendent and school board sometime in the summer of 2016[78] that accused BASD of, *inter alia*, "misus[ing] special education law" to allow the graduation of unqualified students. On September 23, 2016, Ms. Baker met with the outside

---

[77] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3rd Cir. 2008) (internal quotation marks and citation omitted).

[78] The complaint does not provide an exact date.

attorney conducting the investigation into the accusations made in that letter, telling him what she knew about the graduation of unqualified students . Five days later, on September 28, 2016, Ms. Baker was told that she was losing her job because of several "extremely negative" comments received during an evaluation that had taken place over previous several days (*i.e.*, since September 20, 2016, when the evaluation forms were first sent out). The timeframe, then, is tight – perhaps "unusually suggestive."

Ms. Baker, however, alleges more than temporal proximity. The letter's accusations of "misuse of special education law" would directly implicate the school's administration and special education staff – *i.e.*, Ms. Genovese, the principal; Ms. Kocher, the guidance counselor; and Ms. Rado, the director of special education, the same people that Ms. Baker accused of making the "extremely negative" comments. The totality of factual allegations "gleaned from the [complaint] as a whole," then, allow this Court to plausibly infer causation.

### 6. Whether Ms. Genovese, Ms. Kocher, and Ms. Rado Are Entitled to Qualified Immunity

Ms. Genovese, Ms. Kocher, and Ms. Rado argue that they are entitled to qualified immunity because Ms. Baker's "right not to receive unfavorable performance evaluations was not clearly established at the time" of their allegedly retaliatory actions.

When faced with a suit for damages under 42 U.S.C. § 1983, defendants may avoid liability if their actions were objectively reasonable in light of rules "clearly established" at the time.[79] At the time of the alleged retaliatory actions, it was "clearly established" that protected speech may not be punished by either poor employment evaluations[80] or by termination.[81] Therefore, Ms. Genovese, Ms. Kocher, and Ms. Rado are not entitled to qualified immunity.

## C.     Pennsylvania Whistleblower Claim

The Pennsylvania Whistleblower Law ("PWL") states that "[n]o employer may discharge, threaten, or otherwise discriminate or retaliate against an employee . . . because the employee . . . makes a good faith report [about] an instance of wrongdoing or waste by a public body or . . . any other employer."[82] For the reasons stated in this section, Ms. Baker has plausibly alleged PWL claims against CMSU, BASD, Ms. Genovese, Ms. Kocher, and Ms. Rado, and those claims survive. Her request for a jury trial on these claims, however, is denied.

---

[79] *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

[80] *Suppan v. Dadonna*, 203 F.3d 228 (3rd Cir. 2000); *cf McKee v. Hart*, 436 F.3d 165 (3rd Cir. 2006) (holding that defendant was entitled to qualified immunity because "making a few comments over the course of a few months . . . asking an employee to focus on his job" was not a "clearly established" violation of the First Amendment).

[81] *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

[82] 43 P.S. § 1423(a).

### 1.  Whether Ms. Baker was an "employee" under the PWL

The BASD Defendants argue that Ms. Baker's complaint failed to allege that she was an "employee" or "contractual agent" of BASD, or that Ms. Genovese, Ms. Kocher, or Ms. Rado "had the authority to hire, supervise, or discharge" her.

The PWL defines "employee" as "[a] person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied, for an employer."[83]  The PWL defines "employer" as "[a] public body or any of the following which receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body: (1) [a]n individual[,] (2) [a] partnership[,] (3) [a]n association[,] (4) [a] corporation for profit[, or] (5) [a] corporation not for profit."[84]

There is no argument that BASD, a public school, is not a "public body" under the PWL; it undoubtedly qualifies, then, as an "employer" under that law. Ms. Baker has alleged that Ms. Genovese, Ms. Kocher, and Ms. Rado work in various positions at BASD – *i.e.*, that they "receive money from [that] public body to perform work" there; therefore, she has alleged that they also qualify as "employer[s]" under the PWL.  Ms. Baker alleged that she provided counseling

---

[83]  43 P.S. § 1422.

[84]  *Id.*

services at BASD – *i.e.*, that she "perform[ed] services" for that "employer"; consequently, Ms. Baker has alleged that she was an "employee" under the PWL.

The BASD Defendant's argument that Ms. Baker failed to allege that she was an "employee" or "contractual agent" *of* the BASD is irrelevant.  The PWL's definition of "employee," set out above, requires the performance of service, under contract, "*for* an employer"; it does not require the performance of service under a contract *with* a PWL-defined "employer."[85]

The BASD Defendants' argument that Ms. Baker failed to allege that Ms. Genovese, Ms. Kocher, or Ms. Rado "had the authority to hire, supervise, or discharge" her is also irrelevant.  The BASD Defendants seem to have based this argument on a previous version of the PWL.  Before 2014, the PWL defined "employer" as "[a] person *supervising* one or more employees, *including the employee in question*; a superior of that supervisor; or an agent of a public body."[86] The current version of the PWL, however, contains no requirement that the alleged employer have a supervisory position over the alleged employee.

---

[85] *See Rankin v. City of Philadelphia*, 963 F.Supp. 463, 469-72 (E.D. Pa. 1997) (holding that plaintiff was an "employee" for purposes of the PWL, even though his contract was with a private corporation, not the city itself).

[86] 43 P.S. § 1422 (2013) (emphasis added).  This language was changed in 2014 by Pa. Act No. 87 (H.B. 118).

### 2. Whether Ms. Baker alleged that she made a claim of "wrongdoing" or "waste"

CMSU argues that Ms. Baker's complaint failed to allege that she reported wrongdoing or waste.

The PWL prohibits retaliation for reports of "wrongdoing or waste."[87] The PWL's definition of "wrongdoing" is expansive, and includes violations of state law that are "not of a merely technical or minimal nature."[88] The PWL defines "waste" to include "[a]n employer's conduct . . . which result[s] in substantial abuse, misuse, destruction, or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources."[89]

According to her complaint, Ms. Baker's letter to the BASD superintendent and school board reported BASD's "misuse of special education law" to allow the graduation of unqualified students. The use of taxpayer dollars to provide a legally insufficient education to public school students appears to be both a violation of state law and an abuse of public funds. Therefore, Ms. Baker has plausibly alleged that she reported "wrongdoing or waste."

---

[87] Note the disjunctive: a report of wrongdoing *or* a report of waste will suffice.

[88] "Wrongdoing" is defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 P.S. § 1422. *See also Golaschevsky v. Com., Dept. of Environmental Protection*, 554 Pa. 157, 162-63 (1998).

[89] 43 P.S. § 1422.

### 3. Whether the BASD Defendants' Alleged Retaliatory Actions Were Actionable Under the PWL

The BASD Defendants argue that Ms. Baker's complaint failed to allege that the BASD Defendants took "any adverse employment action as a matter of law against" her. Their argument on this issue consists entirely of a reference to their argument that was analyzed – and rejected – *supra*, § II.B.4. Therefore, the BASD Defendants' alleged retaliatory actions were actionable under the PWL.

### 4. Whether Ms. Baker Alleged a Causal Connection Between Her Speech and Her Termination.

As it did in response to the First Amendment retaliation claim, CMSU argues that, for purposes of her PWL claim, Ms. Baker's complaint failed to allege a causal connection between her speech and her termination. For the reasons stated *supra*, § II.B.5, that argument is rejected.

### 5. Jury trial

In their motion to dismiss, the BASD Defendants argued that Ms. Baker is not entitled to a jury trial on her PWL claim, pointing to *Bensinger v. University of Pittsburgh Medical Center*.[90] In her response to that motion, Ms. Baker agrees and withdraws her request for a jury trial on that claim.

---

[90] 98 A.3d 672 (Pa. Super. Ct. 2014).

### D.    Due Process Claim

CMSU argues that Ms. Baker's due process claim fails as a matter of law because Ms. Baker, as a probationary employee, was not entitled to the full scope of protection afforded regular employees under the Pennsylvania Civil Service Act, and because Ms. Baker's complaint failed to allege facts sufficient to show that she was denied the due process protection afforded to probationary employees.

When considering a motion to dismiss, a court assumes the truth of all factual allegations contained in the complaint.[91]  However, this assumption of truth does not apply to the complaint's legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to state a plausible claim for relief.[92]  Under the Pennsylvania Civil Service Act, a probationary employee may be removed if, "in the opinion of the appointing authority[,] the probation indicates that such employee is unable or unwilling to perform the duties satisfactorily or that the employee's dependability does not merit continuance in the service."[93]  A probationary employee is entitled

---

[91]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[92]    *Id.*

[93]    71 P.S. § 741.603(a).

to written notice of her termination under the law,[94] but due process does not require a hearing before that termination.[95]

Ms. Baker bases her due process claim entirely on the allegation that she was terminated "without notice or an opportunity to be heard."  According to her complaint, she was called to a meeting with Ms. Wilson, Ms. Gorrell, and Mr. Beach, where she was told that, because of a few "extremely negative" evaluations, it was necessary to terminate her.  Although she claims that the CMSU agents refused to disclose the contents or authors of those evaluations, she does not allege that CMSU failed to provide her the requisite written notice or a post-termination hearing.[96]  Therefore, Ms. Baker's complaint has failed to "show[] that [she] is entitled to relief" on her due process claim against CMSU,[97] and, because this Court cannot "infer more than the mere possibility of misconduct" on that claim,[98] it is dismissed.  The Court, however, grants Ms. Baker leave to amend her complaint to allege facts sufficient to show that she was denied any required notice or hearing.[99]

---

[94]  71 P.S. § 741.950.

[95]  *Grausam v. Murphey*, 448 F.2d 197 (3rd Cir. 1971).

[96]  According to 71 P.S. §741.951(a), however, post-termination hearings are guaranteed to regular – not probationary – employees.

[97]  FRCP 8(a)(2).

[98]  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[99]  FRCP 4(a).

### E.    Defamation Claim

To prevail on a claim for defamation, a plaintiff must prove:

(1) The defamatory character of the communication
(2) Its publication by the defendant
(3) Its application to the plaintiff
(4) The understanding by the recipient of its defamatory meaning
(5) The understanding by the recipient of it as intended to be applied to the plaintiff
(6) Special harm resulting to the plaintiff from its publication[, and]
(7) Abuse of a conditionally privileged occasion.[100]

For the reasons stated in this section, Ms. Baker's defamation claims (Count IV) are dismissed in their entirety.

#### 1.    Whether BASD is immune to this claim

BASD argues that it is immune to Ms. Baker's defamation claim under the Pennsylvania Political Subdivision Tort Claims Act.[101]  In reply, Ms. Baker agrees and withdraws her defamation claim against BASD.

#### 2.    Whether Ms. Baker Alleged Facts Sufficient to Show that the Alleged Communications Were Defamatory

BASD argues that Ms. Baker's complaint Ms. Baker's complaint failed to allege facts sufficient to show that the alleged communications by Ms. Genovese, Ms. Kocher, and Ms. Rado were defamatory.

---

[100]  42 Pa.C.S. § 8343.

[101]  42 Pa.C.S. § 8541.

Under Pennsylvania law, a communication is defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."[102] The alleged defamatory communication must be false, [103] and statements of opinion *only* are generally not actionable.[104]

As it relates to her defamation claim, Ms. Baker's complaint alleges only that she was terminated by CMSU for a "few . . . extremely negative" comments on her evaluations, and that Ms. Genovese, Ms. Kocher, and Ms. Rado were responsible for those "negative and false comments."  She does not allege the exact contents of those comments, and admits that she does not have that information.[105] She does not even allege what questions or types of questions were posed on the evaluation forms; it is unknown, then, whether the evaluation forms sought factual information (*e.g.*, on Ms. Baker's attendance) which could be falsified, or whether they sought merely the evaluator's opinion.  Therefore, Ms. Baker's complaint has failed to "show[] that [she] is entitled to relief" on her defamation claim against Ms. Genovese, Ms. Kocher, and Ms. Rado,[106] and, because this Court cannot "infer

---

[102] *Thomas Merton Center v. Rockwell Intern. Corp.*, 497 Pa. 460, 464 (1981).

[103] *Hepps v. Philadelphia Newspapers, Inc.*, 506 Pa. 304 (1984), *rev'd on other grounds*, 475 U.S. 767 (1986).

[104] *Baker v. Lafayette College*, 516 Pa. 291, 297 (1987).

[105] ECF No. 1 ¶ 50; ECF No. 22 at 21-22.

[106] FRCP 8(a)(2).

more than the mere possibility of misconduct" on that claim,[107] it is dismissed. The Court, however, grants Ms. Baker leave to amend her complaint to allege that the communications by Ms. Genovese, Ms. Kocher, and Ms. Rado were defamatory.[108]

## III.    CONCLUSION

For the reasons stated above, Ms. Baker's First Amendment retaliation claims (Count I) against CMSU and BASD are dismissed, but her First Amendment retaliation claims against Ms. Genovese, Ms. Kocher, and Ms. Rado survive.  Ms. Baker's PWL claims (Count II) survive, but her request for a jury trial on those claims is denied.  Her due process claim (Count III) and her defamation claims (Count IV) are dismissed in their entirety.  Ms. Baker may amend the dismissed claims as indicated above.

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[107]  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[108]  FRCP 4(a).